(A.R.D. 176)

Delmonico International Corp. *v.* United States

Entry No. 903432.

Third Division, Appellate Term

(Decided May 14, 1964)

*Barnes, Richardson & Colburn* (*Norman C. Schwartz* of counsel) for the appellant.

*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellee.

Before DONLON and RICHARDSON, Judges

RICHARDSON, Judge: This is an application by the importer for a review of the decision and judgment of a single judge, sitting in reappraisement, and holding that the appraised values are the proper dutiable values of the subject merchandise in *Delmonico International Corp.* v. *United States*, 51 Cust. Ct. 416, Reap. Dec. 10598.

The merchandise consists of table radios which were manufactured in Germany and exported therefrom on or about March 2, 1958. The only question presented is whether inland freight and f.o.b. port of exportation charges constitute part of the dutiable value of the merchandise. Appraisement was made on the basis of export value, as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956), by reason of the involved merchandise not being on the final list published by the Secretary of the Treasury (T.D. 54521). Export value as defined in section 1401a.(b), *supra*, is conceded to be the proper basis of valuation of the merchandise at bar. Section 1401a.(b), *supra*, reads as follows:

For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the mer-

chandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

The appraiser returned a unit value for the radios which included a proportionate share of the inland freight and f.o.b. Bremen charges, and the importer filed an appeal for reappraisement against the advance in value resulting from the inclusion of such charges. The importer contended before the single judge, and contends here, that the inland freight and f.o.b. Bremen charges should have been deducted in the computation of the unit value.

The evidence of record consists of an affidavit of a co-owner of the manufacturer-exporter, which was received in evidence as plaintiff's exhibit 1, and a report of a Treasury agent, which was received in evidence as defendant's exhibit A. According to the evidence, the merchandise at bar was purchased f.o.b. Bremen at a price which was inclusive of the questioned charges and pursuant to a sales agreement entered into in May 1957, granting the importer the exclusive right to purchase the manufacturer's products for exportation to the United States. And all prior sales of the manufacturer's merchandise which was imported by the appellant were made in the same manner, that is, f.o.b. port of exportation at prices which were inclusive of the disputed charges. As to other pricing arrangements, the affidavit (plaintiff's exhibit 1) states:

2. That my company presently offers its merchandise for sale, and has always offered its merchandise for sale in the past, on any basis desired by the purchaser, including ex-factory. If the purchaser dires [sic] to purchase on an ex-factory basis the price is predicated upon delivery of the merchandise packed and ready for shipment, to the purchaser's carrier at the factory, with the purchaser bearing all cost, risk and responsability [sic] for transporting the merchandise. Naturally, if the purchaser desired to buy on an f.o.b. seaport basis, our price would include an amount for delivery of the merchandise to the seaport, and loading on board the vessel, and risk and title would not pass until the merchandise has been placed on the vessel.

After referring to the manner in which merchandise had been purchased by the importer from the manufacturer, as aforesaid, the affidavit continues:

3. . . . However, Delmonico International Corp. could have purchased from us at all times on an ex-factory basis at a price correspondingly reduced by the amount of the inland freight and f.o.b. charges.

4. Orders are accepted and all sales consummated at our office at the factory. We therefore regard the factory as the principal market for the sale of our merchandise.

The foregoing constitutes the evidence which was before the single judge, and which forms the basis of the appellant's argument that the availability of the involved merchandise on an ex-factory basis and at an ex-factory price requires the exclusion of inland freight and f.o.b. port of exportation charges from the computation of statutory export value. The trial court attached little or no weight to the affidavit and concluded that it was insufficient without corroboration to establish sales or offers of sales at an ex-factory price.

As we view the evidence, the affidavit, which was received in evidence as plaintiff's exhibit 1, is devoid of evidence of actual sales or offers of sales of merchandise such as that at bar at ex-factory prices. It simply indicates that, at the time the instant merchandise was exported, such merchandise could have been purchased at ex-factory prices had the importer wished to do so. The affidavit does not, and indeed could not, purport to contain evidence of ex-factory prices, in view of the fact that all sales of the manufacturer's merchandise for exportation to the United States had been made exclusively to the importer herein under another price arrangement. Thus, with no record of sales or offers of sale at ex-factory prices available, we are urged to consider as sufficient under the applicable statutory criteria potential ex-factory prices in lieu of actual ex-factory prices.

None of the cases cited to us in the briefs of counsel, or any which our own research has discovered, have considered as a means of satisfying the statutory export value requirements potential ex-factory prices, as distinguished from actual ex-factory prices. And we decline to do so here, in view of the statutory mandate that "export value . . . shall be the price . . . at which . . . merchandise *is freely sold* or, in the absence of sales, *offered for sale* . . . ." [Italics supplied.] Such language leaves no room for prognosis as to what might have been the course of a sales transaction insofar as pricing arrangements are concerned. What is actually done in terms of sales or offers of sale is what establishes a market price, and not merely what it is possible to do in the matter of sales or offers of sale. It has been held that a *willingness to sell* merchandise at a price is no evidence of a market price. See *Transatlantic Shipping Co., Inc., et al.* v. *United States*, 28 CCPA 19, C.A.D. 118, and *Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 877, Reap. Dec. 5196. By the same token, the fact that merchandise *could have been sold* at a price is no evidence of a market price either. Since the evidence at bar is limited to the manufacturer's capabilities for making sales at ex-factory prices, and is not at all addressed to its actual sales or offers of sale at ex-factory prices, the evidence is palpably deficient to establish the ex-factory prices contended for herein by appellant. Consequently, the rule laid down by our appeals court in *United States* v. *Paul A. Straub*

& *Co., Inc.*, 41 CCPA 209, C.A.D. 553, and followed in *Albert Mottola* v. *United States*, 46 CCPA 17, C.A.D. 689, is controlling and must be followed herein. Under the rule as therein applied, there has been adduced no evidence that the instant radios were sold or offered for sale at the factory at prices which did not include the inland freight and f.o.b. port of exportation charges.

Another circumstance of the instant record warrants comment. As previously indicated, appellant was the sole purchaser of the manufacturer's products for exportation to the United States. This fact brings the case within the provisions of 19 U.S.C.A., section 1401a(f) (1)(B) (section 402(f)(1)(B), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956), which requires, among other things, that the price contended for by appellant "fairly reflects the market value of the merchandise." The record before us is barren of any evidence from which we can determine that the alleged ex-factory prices fairly reflect the market value of the merchandise at bar.

For the reasons stated, appellant has not overcome the presumption favoring the appraised values as being the proper dutiable values of the merchandise at bar. Therefore, the judgment of the trial court is affirmed.

Judgment will be entered accordingly.